**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
                           :

**LEONARD GETLER,**          :
                           :
       **Plaintiff,**     :
                           :
    **-against-**      :    **REPORT AND RECOMMENDATION**
                           :    **05 Civ. 8550 (CLB)(MDF)**
**CORNELL WEILL UNIVERSITY**   :
**MEDICAL COLLEGE DEPT. OF**   :
**SURGERY,**                :
                           :
       **Defendant.**    :
                           :
------------------------------X

**TO:  THE HONORABLE CHARLES L. BRIEANT, U.S.D.J.**

    In this employment discrimination suit, Plaintiff, Leonard Getler, claims that he was terminated from his position with The Weill Medical College of Cornell University ("WMC") in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA").  Defendant, Cornell University (hereinafter, "Defendant"), has filed a motion for summary judgment seeking dismissal of Plaintiff's complaint, which your Honor has referred to me for a Report and Recommendation.  For the reasons that follow, it is respectfully recommended that your Honor GRANT Defendant's motion and dismiss Plaintiff's complaint.

**BACKGROUND**

    The following facts are undisputed, unless otherwise noted, and taken in the light most favorable to the non-moving party, here, the Plaintiff.

1

I.        __Plaintiff's Employment at WMC__

In January 1982, WMC hired Plaintiff as a billing administrator in the Department of Surgery.  *See* Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Rule 56.1 Stmt.") at ¶ 2; Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opp.") at 3. Plaintiff's job responsibilities included billing patients and insurance carriers for clinical services provided by WMC physicians and managing accounts receivables.  *See* Rule 56.1 Stmt. at ¶ 6; Plaintiff's Opp. at 3-4.

During the Plaintiff's employment, WMC conducted annual performance evaluations.  *See* Rule 56.1 Stmt. at ¶ 8; Plaintiff's Opp. at Exs. 5-21, 27, 30, 34; Notice of Motion at Exs. F-H, L, N, P.  For the years 1983 to 1993 and 1996 to 2000,[1] Plaintiff received positive performance evaluations.  In each of these years, depending on the evaluation form utilized at the time, he was consistently given an overall performance rating of "commendable," "above average," or "exceeds expectations." *See* Plaintiff's Opp. at Exs. 5-20.  Plaintiff also repeatedly received positive comments on his evaluations.  *See id*.

In 2000, while Plaintiff's evaluations remained positive, they began to more specifically include goals for Plaintiff that

_____

[1]  The record does not include Plaintiff's evaluations for the years 1982, 1994, and 1995.

2

had not consistently been met and areas in which he needed to improve. *See* Affidavit of Steven M. DeBrocky ("DeBrocky Aff.") at ¶ 5. In his 2000 evaluation, Plaintiff's supervisor noted that he needed "[t]o reduce [accounts receivable] over 12 months to 0% within 4 months to meet the Cornell University standard" and "[t]o maintain a net collection rate of at least 85% on all accounts." Plaintiff's Opp. at Ex. 19. Plaintiff was 53 years old at the time of this evaluation. *See* Rule 56.1 Stmt. at ¶ 26.

Plaintiff's 2001 evaluation set forth similar goals, including, *inter alia*, the need to "take appropriate action on 100% of credit balances within one month of credit creation" and to "bring all accounts to closure within 12 months." Plaintiff's Opp. at Ex. 20. Plaintiff's supervisor, however, was generally positive in his review, stating that Plaintiff had "exceeded the departmental Net Collection Rate of 85% for the . . . year" and "considerably improved the gross and net collection rates for seven physician accounts." *Id*.

At around this time, Plaintiff's supervisor, Andrea Brunhoelzl, and Steven DeBrocky, the Department Administrator in the WMC Department of Surgery, began to receive an increasing number of complaints from WMC physicians, particularly Dr. Stolar and Dr. Crair, about Plaintiff's performance. *See* Affidavit of Andrea Brunhoelzl ("Brunhoelzl Aff.") at ¶ 7; DeBrocky Aff. at ¶ 6. The doctors complained about "the poor billing and

3

collections for the pediatric surgery division at WMC, and specifically [Plaintiff]'s performance as a biller." Brunhoelzl Aff. at ¶ 7; *see* DeBrocky Aff. at ¶ 6. "The doctors were particularly frustrated by their inability to get a straight answer from [Plaintiff]." Brunhoelzl Aff. at ¶ 7.

In 2002, while Plaintiff received an overall performance rating of "Successfully Meets Expectations," his performance in three categories was found to be "Below Expectations." *See id*. at Ex. 21. These categories included "Job Knowledge and Comprehension," "Work Quality," and "Initiative/Problem Solving/Decision Making." *See id*. According to Brunhoelzl, these negative ratings were based on Plaintiff's "inability to achieve the financial goals applied to all of the Department's billing staff." Brunhoelzl Aff. at ¶ 6. The evaluation form allowed for comments from the employee; however, Plaintiff made no objections to the ratings.

On March 19, 2003, DeBrocky, Brunhoelzl, and Darchelle Barber, Plaintiff's direct supervisor, met with Plaintiff to discuss his performance. *See id*. at ¶ 8; DeBrocky Aff. at ¶ 7. At this meeting, the supervisors gave Plaintiff specific goals regarding posting charges, managing receivables and Explanation of Benefits forms ("EOB's"), and account follow-up. *See* Brunhoelzl Aff. at ¶ 8; DeBrocky Aff. at ¶ 7; Notice of Motion at Ex. J (chart of objectives and goals dated March 19, 2003). They

4

also gave Plaintiff a verbal warning for his poor performance. *See* Brunhoelzl Aff. at ¶ 8; DeBrocky Aff. at ¶ 7; Notice of Motion at Ex. R, pp. 193-94 (Plaintiff's Depo.). After the meeting, DeBrocky sent an e-mail to Dr. Stolar, Dr. Crair, and Dr. Spigland outlining what had taken place at the meeting with Plaintiff. *See* Plaintiff's Opp. at Ex. 25. The e-mail noted that the meeting had been in response to the doctors' concerns about Plaintiff's "billing/follow-up performance for Pediatric Surgery." *Id.*

In May 2003, Barber issued a written warning to Plaintiff, indicating that, while he had made some improvement in his charge posting, his performance remained unsatisfactory in three areas: (1) entering charges within 48 hours of receipt; (2) meeting deadlines and completing backlogged work; and (3) taking appropriate account action steps and documenting through supporting comments in IDX. *See* Plaintiff's Opp. at Ex. 26. The memorandum advised Plaintiff that, if he failed to demonstrate improvement in these areas, he would be subject to "further corrective action up to and including termination of employment." *Id.*

After the warning, Dr. Stolar continued make complaints about Plaintiff's performance and non-responsiveness, specifically with respect to Plaintiff's delay in sending out bills and his lack of follow-up. *See* DeBrocky Aff. at ¶ 9. Dr.

Stolar asked DeBrocky to address these concerns.  *See id.*

In his September 2003 evaluation, Plaintiff received an overall performance rating of "Below Expectations."  *See* Plaintiff's Opp. at Ex. 27.  In four out of ten categories he received ratings of "Below Expectations" or "Unsatisfactory." *See id.*  The evaluation also included several comments about Plaintiff's performance, which stated that Plaintiff "[r]epeatedly . . . gives misinformation to management and physicians on industry standards," "has the fewest accounts assigned to him and has difficulty being on time with his EOBs and collection efforts," and "[d]oes not plan and organize work for maximum efficiency and has not met deadlines."  *Id.*  The evaluation further noted that, while Plaintiff "shows initiative and performs job duties independently . . . oftentimes management find[s] errors in the judgments made and actions taken."  *Id.*  In addition to these comments, the evaluation included a long list of goals and improvements that Plaintiff was required to meet. *See id.*  This section of the evaluation stated, *inter alia*,

> Mr. Getler needs to re-acquaint himself with the department policy and procedure manual as well as work with the Billing Manager to ensure that his accounts are resolved in accordance with the policies and standards of the department.   Mr. Getler's unfamiliarity with proper procedure and protocol causes him to relay inaccurate information to the physician staff and that of his fellow co-workers.

*Id.*

Plaintiff submitted a written response to this evaluation.

6

*See id*. at attachment.  With respect to his "Unsatisfactory"
rating on the Job Knowledge and Comprehension category, Plaintiff
referred to the staff in the Department as a "revolving door" and
stated, "ask anyone of the predecessors and they will unanimously
tell you it wasn't me, but the prevailing behavior in the
department." *Id*.  In response to the negative comments
concerning his productivity, Plaintiff essentially admitted that
he was unable to meet deadlines, explaining that, the fact that
Dr. Crair did a large amount of his surgeries in "outfield
hospitals created a "no win situation." *Id*.  Regarding the
comments about his initiative and problem solving abilities,
Plaintiff stated, "the so[-]called errors are few and far
between, the bigger picture is my collections are up over the
last year and we all make mistakes now and then." *Id*.  Finally,
in response to his supervisor's statement that he does not work
efficiently and fails to meet deadlines, Plaintiff placed the
blame on "too many transitional changes occurring in our
department," lack of "work tools," and insufficient staff. *Id*.
According to DeBrocky, "[t]hese comments reflected [management's]
difficulties in dealing with [Plaintiff], who was argumentative,
non-responsive and unwilling to accept responsibility for the
problems."  DeBrocky Aff. at ¶ 11.

  In October 2003, Plaintiff received another written
reprimand for poor performance.  *See* Plaintiff's Opp. at Ex. 29.

In this memorandum, DeBrocky explained that Plaintiff's performance had not improved since the May 2003 written warning and specifically noted Plaintiff's "inability to consistently manage deadlines for completing E.O.B.'s, routine submission of incomplete/inaccurate claims, lack of timely feedback to physicians on status of claims edits/re-submissions, and failure to effectively work on all accounts assigned to [him] on a routine, periodic basis." *Id*. DeBrocky warned Plaintiff that failure to show significant improvement in the following two weeks would result in termination. *See id*.

In an e-mail dated December 2, 2003, Barber provided to Brunhoelzl her "write up" on Plaintiff. *See* Plaintiff's Opp. at Ex. 32. Barber gave the following assessment of Plaintiff:

> Mr. Getler tends to look for a blanket way to handle all problems and frequently tries to corner management into making sweeping decisions that all accounts should be re-filed, written off, or sent to collections. It is Mr. Getler's lax approach to account handling that concerns both management and the physician staff and causes all concerned to doubt Mr. Getler's ability to do the job as well as question his credibility.

*Id*.

In order to assess Plaintiff's progress, the Department of Surgery conducted another evaluation of Plaintiff in December 2003. *See id*. at Ex. 30. Plaintiff's overall performance rating after this evaluation was "Unsatisfactory," the lowest possible rating. *See id*. Plaintiff's supervisor commented that Plaintiff

continued to demonstrate a lack of understanding of Department policies and procedures and still had excessive backlogs and delays. *See id.* The evaluation further stated that Plaintiff continued to lag behind his peers in quantity of work and continued to use poor judgment in making decisions and providing information. *See id.* Again, the evaluation included a litany of goals and improvements that Plaintiff was expected to meet. *See id.*

Plaintiff provided a written response to the comments in his evaluation. *See id.* at attachment. He expressed that it was not possible to expressly follow Department policies and procedures because "changes are made from day to day" and "proper account handling is a condition that is ever evolving." *Id.* He further stated, "Nothing is written in stone. We must be [as] flex[i]ble as possible with our policies and procedures within the legal guidelines." *Id.* DeBrocky understood these comments to be an expression of Plaintiff's belief that he did not need to follow WMC policies and procedures. *See* DeBrocky Aff. at ¶ 14. With respect to the comments concerning Plaintiff's backlogs and delay, Plaintiff blamed insufficient staffing. *See id.* He further commented that his backlog of EOB's "is felt by the entire staff and is not in any way a reflection of work accomplishment in terms of ability to perform the task." *Id.* In response to the comment that he did not consistently consult with

management to solve problems, Plaintiff stated, "The consulting with management in the past at times has proven to be inefficient and time consuming."  *Id*.  DeBrocky "found the last remark, as well as the overall tone of [Plaintiff's] comments, to be insulting and insubordinate."  DeBrocky Aff. at ¶ 14.  While Plaintiff disagreed with this characterization of his comment, he admitted at his deposition that management should have left him alone and let him do his work as he wanted.  *See* Notice of Motion at Ex. R, p. 222.

Plaintiff received his third written reprimand in February 2004.  *See* Notice of Motion at Ex. O.  Again, Plaintiff was advised that he had failed to show any improvement in the areas that had been specified in the previous warnings and evaluations and that failure to show improvement may result in termination. *See id*.

Plaintiff's September 2004 evaluation was, again, generally negative.  *See id*. at Ex. 34.  He received an overall performance rating of "Unsatisfactory" and several comments indicating that he continued to have problems with following Department policies and procedures, accurately completing his work, using proper judgment in the handling of his accounts, and communicating with physician staff.  *See id*.  Plaintiff responded to his supervisor's comments in each category, noting under several comments that others would disagree with the supervisor's

remarks.  *See id*.  DeBrocky stated in his affidavit that
Plaintiff's comments made it clear to him that Plaintiff "had
determined to perform his job without regard to the Department's
instructions" and that "he was unwilling even to try to follow
our directions."  DeBrocky Aff. at ¶ 17.

In January 2005, after consulting with the WMC Human
Resources Department, the Department of Surgery terminated
Plaintiff's employment.  *See* DeBrocky Aff. at ¶ 18; Brunhoelzl
Aff. at ¶¶ 9, 12-13.  Plaintiff was 57 years old.  *See*
Plaintiff's Opp. at 2.  Plaintiff's position was subsequently
filled by Caroline Henry, a Certified Professional Coder who had
worked for WMC since 2004.  *See* Brunhoelzl Aff. at ¶¶ 13-14.
Plaintiff asserts, and Defendant does not dispute, that Henry was
under 40 years of age.  *See* Plaintiff's Opp. at 1.

II.      **Procedural History**

On April 10, 2005, Plaintiff filed a charge of
discrimination with the Equal Employment Opportunity Commission
("EEOC"), alleging that he was terminated from his position at
WMC due to his age.  Plaintiff's Opp. at Ex. 2.  On August 17,
2005, the EEOC concluded that Plaintiff failed to establish a
violation of the ADEA and issued to Plaintiff a right to sue
letter.  *See id*. at ¶ 3.  Plaintiff commenced the instant action
on October 5, 2005.

III.        **Summary Judgment Motion**

   Defendant has filed a motion for summary judgment seeking dismissal of Plaintiff's complaint.  As required by Local Rule 56.2, along with its motion papers, Defendant served on Plaintiff a Notice to Pro Se Litigant Opposing Motion for Summary Judgment, advising Plaintiff as to how to properly oppose a motion for summary judgment.  *See* Notice.  In its motion, Defendant asserts that Plaintiff was terminated because of his poor performance and insubordination, not his age.  In support of its position, Defendant has submitted affidavits from DeBrocky and Brunhoelzl and various exhibits, including portions of Plaintiff's deposition transcript.  DeBrocky and Brunhoelzl both maintain that their decision to discharge Plaintiff was based on his poor performance, not a discriminatory motive.  *See* Brunhoelzl Aff. at ¶¶ 12, 16; DeBrocky Aff. at ¶¶ 18-20.

   Plaintiff, on the other hand, contends that "Defendant fabricated a paper trail of purported poor job performance and insubordination between 2002 and 2004 so that if [Plaintiff] sought vindication, Defendant would have a defense to his age discrimination claim."  Plaintiff's Opp. at 2.  He disputes Defendant's assertion that he demonstrated poor performance and insubordination.  In support of his claim, Plaintiff has submitted an unsworn opposition to Defendant's motion and several exhibits.  Plaintiff argues that the sudden change in his

12

performance evaluations in 2002 demonstrates that the Defendant was simply creating a paper trail to justify his termination.  He asserts, "The Court need go no further than Defendant's evaluations of Mr. Getler's performance from 1982 through 2004, and to Bruenhoelzl's e-mail of January 7, 2005, to see that Mr. Getler's abrupt, sudden and unexplained, significant downgrade in performance ratings beginning in 2002 – and following 20 years of exemplary performance – was all simply a fabrication."[2]  *Id*. at 25.

In further support of his claim, Plaintiff notes that, in October 2002, he received a 20-year service award from WMC.  *See id*. at 11-12.  Plaintiff asserts that, the fact that he received this award just five months before he received a verbal warning about his performance supports the conclusion that the Defendant fabricated its documentation of Plaintiff's poor performance in order to create a lawful basis for his termination.  *See id*.  He further asserts that, at a November 2002 annual luncheon, Brunhoelzl "confronted [him] and curiously asked him when he was going to retire."  *Id*. at 12.  Plaintiff also points to a memorandum sent by Susan McCreight to all WMC non-academic staff regarding review of the compensation program for non-academic

---

[2]  The January 7, 2005 e-mail to which Plaintiff refers is an e-mail sent by Bruenhoelzl to the Department of Surgery physicians advising them that Plaintiff was no longer working at WMC and that Caroline Henry would be taking over his position. *See* Plaintiff's Opp. at Ex. 1.

staff.  *See* Plaintiff's Opp. at 11, Ex. 22.  In the memorandum, McCreight advised the staff that WMC had hired an outside consulting agency to assist in making changes to the non-academic compensation program and policies and asked the staff members to complete a Position Description Questionnaire to aid the Human Resources Department in making necessary changes to the program. *See id.* at Ex. 22.  Plaintiff appears to assert that there is some connection between the review of the compensation program and his termination.  *See id.* at 11.  He finds significance in the fact that six months after receiving McCreight's memorandum he was given his first verbal warning about his performance.  *See id.*

Finally, Plaintiff points to the deposition testimony of certain WMC physicians who stated that they were satisfied with Plaintiff's performance as a biller.  *See* Plaintiff's Opp. at 24. Dr. Michael Osborne testified that, up until the time that Plaintiff was terminated, he was satisfied with Plaintiff's performance in the Department of Surgery.  *See id.* at Ex. 36.  He further testified that he never spoke with any of the other physicians in the Department about Plaintiff's performance.  *See id.*  Dr. Nitsana Spigland testified that, for the seven or eight years that Plaintiff was the biller for her services, his performance was "fine" and she never witnessed any change in the quality of service that he provided.  *See id.* at Ex. 37.

14

Similarly, Dr. Rache Simmons stated that she did not have any problems with Plaintiff's performance.  *See id*. at Ex. 38.

## ANALYSIS

### I.        Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248.  In order for there to be a genuine issue for trial, there must be sufficient evidence in the record to support a jury verdict in the non-moving party's favor. *See id*. at 249.  When making a summary judgment determination, "the court must view the evidence in the record in the light most favorable to the non-moving party, drawing all reasonable

15

inferences in that party's favor." *Abdu-Brisson v. Delta Air
Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

In opposing a motion for summary judgment, the non-moving
party must "go beyond the pleadings and by her own affidavits, or
by the 'depositions, answers to interrogatories, and admissions
on file,' designate 'specific facts showing that there is a
genuine issue for trial.'"[3] *Celotex Corp. v. Catrett*, 477 U.S.
317, 324 (1986).  Mere conclusory allegations and denials are
insufficient to create a genuine issue of fact; rather, the
opposing party must set forth "concrete particulars" showing that
a trial is necessary.  *BellSouth Telecommunications, Inc. v. W.R.
Grace & Company-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996)(internal
quotations omitted).  Finally, "[w]here the non-moving party is
proceeding *pro se*, the court must interpret that party's

---

[3] Plaintiff has submitted an opposition to Defendant's
motion in which he makes factual allegations.  His opposition,
however, is not a sworn affidavit.  Moreover, he did not submit
any portion of his own sworn deposition testimony.  Defendant
asserts that Plaintiff's failure to comply with the requirements
of Rule 56 requires that this Court grant its motion.  Given
Plaintiff's *pro se* status and the leeway that the Court must
afford *pro se* litigants, the failure to submit a sworn affidavit
should not be considered fatal to his case.  *See Kelly v. Robert
Ainbinder & Co.*, No. 87 Civ. 6348, 1991 WL 253028, at *4
(S.D.N.Y. Nov. 20, 1991).  On the same note, Plaintiff failed to
submit an opposing Rule 56.1 statement as required by the Local
Rules.  He does, however, set forth a "Counter-Statement of
Facts" in his opposition.  *See* Plaintiff's Opp. at 3-21.  For the
same reason, Plaintiff's recitation of his version of the facts
in his opposition should be considered his opposing Rule 56.1
statement.  *See Avillan v. Potter*, No., 2006 WL 3103309, at *1,
n.2 (S.D.N.Y. Nov. 1, 2006).

supporting papers liberally, that is, interpret them 'to raise the strongest arguments that they suggest.'"   *Forsyth v. Fed'n Employment and Guidance Svc.*, 409 F.3d 565, 569 (2d Cir. 2005)(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

II.      **ADEA**

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1). Claims brought pursuant to the ADEA are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).   Under this framework, the initial burden rests with the plaintiff, who must establish a *prima facie* case of age discrimination.   *See id.* "[P]laintiff must show: (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Viola v. Philips Med. Sys. of North America*, 42 F.3d 712, 716 (2d Cir. 1994)(internal quotations marks and citations omitted).   The burden then shifts to the employer to articulate a legitimate,

non-discriminatory reason for the discharge.  *See id*.  "If the
employer articulates an age-neutral reason for the termination,
plaintiff must bear the ultimate burden of proving that the
employee's age was the real reason for the discharge" and that
the reason proffered by the employer is merely a pretext for
discrimination.  *Id*.

Plaintiff has established the first three elements of a
*prima facie* case by showing that: (1) he was over 40 years age of
age at the time of his discharge and, therefore, is a member of
the protected class; (2) that he had over 20 years of experience
as a biller for WMC and was qualified for the position; and (3)
he was discharged from his position as a biller for WMC.
Defendant argues that Plaintiff cannot satisfy the fourth element
of a *prima facie* case - that the termination took place under
circumstances giving rise to an inference of discrimination.  *See*
Memorandum of Law in Support of Defendant's Motion for Summary
Judgment ("Defendant's Memo of Law") at 13.  Plaintiff primarily
contends that the fact that he was replaced by a younger employee
gives rise to an inference of discrimination.

In *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308
(1996), the Supreme Court observed that "the fact that a
replacement is substantially younger that the plaintiff is a far
more reliable indicator of age discrimination than is the fact
that the plaintiff was replaced by someone outside the protected

18

class." Thus, the fact that the plaintiff was replaced by someone "substantially younger" is a circumstance that may give rise to an inference of discrimination. *See Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001). The Second Circuit has explained, however, that "for replacement by a younger worker to support the inference of discrimination necessary to establish a *prima facie* case, there must be some evidence showing a defendant acted with knowledge as to the plaintiff's age relative to that of [his or] her replacement." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 77 (2d Cir. 2005). As the Court noted in *Woodman*, in most cases, "a defendant employer's knowledge of a plaintiff's age will be undisputed because employers routinely maintain employee age information in their personnel files or are generally aware of employees' relative ages from personal on-the-job contact." *Id*. at 80. Here, Bruenhoelzl stated in her affidavit that she did not know how old Plaintiff was. *See* Bruenhoelzl Aff. at ¶ 16. DeBrocky, however, made no such assertion in his affidavit and the Defendant, in its memorandum of law, does not attempt to dispute Plaintiff's statement that Henry was under the age of 40 or that Plaintiff was 57 years old. In these circumstances, the Court may infer that the employer was aware of the discrepancy between Plaintiff's and Henry's ages. Moreover, although the record does not indicate Henry's exact age, Plaintiff asserts and the

19

Defendant does not dispute that she was under the age of 40 when she took over Plaintiff's position and substantially younger than Plaintiff.  Indeed, even if she was 39 years old at the time, an age difference of eighteen years cannot be considered "insignificantly younger."  *See Byrnie v. Town of Cromwell v. Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001)(holding that 22-year age difference between plaintiff and rival job applicant supports inference of age discrimination).  Thus, under these circumstances, the fact that Plaintiff's position was filled by a younger employee supports an inference of discrimination to make out a *prima facie* case.

Defendant has met its minimal burden of "producing 'through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir. 1997)(quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)).  It asserts that Plaintiff was terminated for poor job performance and insubordination and has affidavits of Plaintiff's superiors, Plaintiff's performance evaluations, and written warnings issued to Plaintiff which support its position. Moreover, Plaintiff admitted at his deposition that he did not achieve WMC's performance goals for billing and collection.  *See* Notice of Motion at Ex. R, pp. 195-96.  Such reasons are

20

sufficient to satisfy the employer's burden under the *McDonnell Douglas* analysis.

Plaintiff has failed to satisfy his ultimate burden of proving that intentional discrimination, rather than the reason offered by Defendant, was the true reason for his termination. "To defeat a properly supported motion for summary judgment, plaintiff must 'produce sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the employer were false, *and* that more likely than not the employee's age was the real reason for the discharge.'" *Viola*, 42 F.3d at 717 (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1994)(emphasis in original). The evidence that Plaintiff has offered, does not suffice to create a genuine issue of material fact regarding the Defendant's motives.

Plaintiff has submitted copies of all of his available performance evaluations since he began working at WMC. He asserts that the sudden change in his performance ratings is proof of Defendant's discriminatory motive in terminating him. The Second Circuit has made clear, however, that "sudden and unexpected downturns in performance reports cannot, by themselves, provide the basis for a discrimination action." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)(citing *Viola*, 42 F.3d at 718). In *Viola*, the Court reasoned: "Dismissals are often preceded by adverse performance

reviews.  Were we to view this pattern as suspect, without more, many employees would be able to appeal their personnel evaluations to a jury."  42 F.3d at 718.  Plaintiff, here, has not submitted any other evidence, such as evidence of supervisors' biased remarks, that would permit a rational jury to find that Defendant acted with an unlawful motive.  *Cf. Danzer*, 151 F.3d at 56 (finding plaintiff's evidence of a sudden downturn in performance evaluations coupled with evidence of biased remarks could support an inference of discrimination).  While Plaintiff points to additional evidence and makes his own assertions, as explained below, nothing on which he relies supports a finding of pretext.  Furthermore, Plaintiff's disagreement with the negative performance ratings and his claim that the evaluations were fabricated by Defendant do not raise a genuine issue of material fact that must be presented to a jury. *See Wado v. Xerox Corp.*, 991 F.Supp. 174, 188 (W.D.N.Y. 1998)("[A]n employee's personal disagreement with his employer's evaluation of him is not enough to create an inference of discrimination.").

Plaintiff also points to the October 2002 memorandum from Susan McCreight to the WMC non-academic staff concerning review of the compensation program to support his claim that the Defendant fabricated his negative evaluations and warnings.  His reliance on this memorandum, however, is entirely unavailing.

22

The simple fact that this memorandum was issued months before Plaintiff received a verbal warning about his performance does not create a genuine issue of material fact for trial.  Plaintiff can point to nothing in this memorandum which indicates that the commencement of a review of the compensation program was at all related to the performance evaluations of WMC employees or management's decisions concerning hiring and termination of employees.  Indeed, Defendant has submitted an affidavit from Susan Mccreight in which she affirmed that "[t]he 2002 review of WMC's compensation system was not used as the basis for any layoffs or terminations."  Affidavit of Susan B. McCreight ("McCreight Aff.") at ¶ 2.  McCreight outlined management's reasons for conducting a review of the compensation program and explained that, after the review, changes were made to employees' job titles and salary grades, which resulted in some salary increases, but no reductions in pay.  *See id*. at ¶¶ 3-7.  This memorandum and the fact that there was a review of the WMC compensation program fail to raise a genuine issue of material fact with respect to Plaintiff's age discrimination claim.

Plaintiff also submits documentation of the 20-year service award he received in October 2002 and contends that any negative evaluation or warning received in such close proximity to this award must be a fabrication.  Such an assertion is merely speculative and cannot serve to raise an issue of fact for trial.

Moreover, McCreight's affidavit makes clear that this award had nothing to do with Plaintiff's performance.  She explains that WMC recognizes all employees for their service at five-year intervals and that such awards are based solely on length of service and are not related to the quality of the employee's work or performance evaluations.  *See* McCreight Aff. at ¶ 8.

The testimony of Drs. Spigland, Simmons, and Osborne that they were satisfied with Plaintiff's work also does not suffice to create a genuine issue of material fact concerning the Defendant's motives.  That these doctors did not have any problems with Plaintiff's performance does not change the undisputed fact that other doctors and the administrators in the Department of Surgery were not satisfied with Plaintiff's performance.  Moreover, it was the supervisory staff, including Bruenhoelzl and Barber, and not the physicians, who assigned and supervised Plaintiff's work and were responsible for managing and achieving the goals set by the Department of Surgery and the physicians.  *See* Affidavit of James R. Kahn ("Kahn Aff.") at Ex. A (transcript of Plaintiff's deposition), pp. 270-71.  Indeed, Drs. Spigland and Osborne both testified that, as physicians, they were not familiar with details of the billers' work or management's expectations for Plaintiff and the other billers. *See* Kahn Aff. at Exs. B (transcript of deposition of Dr. Spigland), pp. 11, 25 and C (transcript of deposition of Dr.

Osborne), pp. 24-25.  All three doctors also testified that they never spoke with other physicians about Plaintiff's work.  *See id*. at Ex. B, pp. 32; C, 29; and D (transcript of deposition of Dr. Simmons), 25.  Evidence that certain doctors were satisfied with Plaintiff's performance cannot support a finding that Defendant terminated Plaintiff on the basis of his age, in view of the overwhelming undisputed evidence that management and other physicians were not happy with Plaintiff's work.

Plaintiff's allegation that Bruenhoelzl asked him when he planned to retire also does not support a finding of age discrimination.  Other than Plaintiff's unsworn assertion, there is no evidence in the record to support this claim.  In fact, Bruenhoelzl denies having this conversation with Plaintiff.  *See* Bruenhoelzl Aff. at ¶ 16.  However, "even if plaintiff was asked about his retirement plans, inquiries about retirement plans 'do[] not necessarily show animosity towards age.'"  *Jetter v. Knothe Corp.*, 200 F.Supp.2d 254, 264, n.9 (S.D.N.Y. 2002)(quoting *Greenberg v. Union Camp*, 48 F.3d 22, 29 (1st Cir. 1995)).  In the absence of any other evidence supporting a finding of discrimination, such a stray remark is insufficient to satisfy Plaintiff's burden of creating a genuine issue of material fact concerning pretext.  *See Bunk v. General Services Admin.*, 408 F.Supp.2d 153, 158 (W.D.N.Y. 2006).

Finally, certain facts present in this case undermine

Plaintiff's claim of age discrimination.  It is undisputed that, at the time Plaintiff was terminated, both DeBrocky and Bruenhoelzl were over the age of 40.  *See* DeBrocky Aff. at ¶ 20. Moreover, at the time of Plaintiff's last positive evaluations in 2000 and 2001 – evaluations that Plaintiff does *not* allege were fabricated and which were given by the same individuals that terminated him, DeBrocky and Bruenhoelzl, Plaintiff was 53 and 54 years old.  The fact that the same supervisors gave Plaintiff both positive and negative performance evaluations in a short span of time and while Plaintiff was a member of the protected class suggests that age discrimination was unlikely.  *See Grady*, 130 F.3d at 560.

The evidence presented by Plaintiff is not sufficient to permit a jury to find that the real reason he was terminated was his age.  Plaintiff has, therefore, failed to meet his burden in opposing Defendant's summary judgment motion.

## CONCLUSION

In light of the foregoing, I respectfully recommend that your Honor grant the Defendant's motion for summary judgment and dismiss Plaintiff's complaint.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R.

Civ. P., or a total of thirteen (13) working days, (*see* Rule
6(a), Fed. R. Civ. P.), from the date hereof, to file written
objections to this Report and Recommendation.  Such objections,
if any, shall be filed with the Clerk of the Court, with extra
copies delivered to the chambers of The Honorable Charles L.
Brieant, at the United States Courthouse, 300 Quarropas Street,
Room 275, White Plains New York, 10601, and to the chambers of
the undersigned at Room 434, 300 Quarropas Street, White Plains,
New York 10601.

    Failure to file timely objections to the Report and
Recommendation will preclude later appellate review of any order
to judgment that will be entered by Judge Brieant.  *See Thomas v.
Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d
Cir.), cert. denied 113 S. Ct. 825 (1992); *Small v. Secretary of
H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v.
Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988).  Requests for
extensions of time to file objections must be made to Judge
Brieant and should not be made to the undersigned.

Date: December 6 , 2006
White Plains, New York

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing report and recommendation have been sent
to the following:

The Honorable Charles L. Brieant, U.S.D.J.

Leonard Getler
685 Toni Court
Yorktown, New York  10598

James R. Kahn, Esq.
Office of University Counsel
445 East 69th Street
New York, New York 10021